# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Tonya Anderson,                    )
                                   )
                 Plaintiff,        )
                                   )
        v.                         )          1:21CV778
                                   )
Diamondback Investment Group, LLC, )
                                   )
                 Defendant.        )
                                   )
_____  )


## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff brought this action alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and discrimination for the lawful use of lawful products during nonworking hours in violation of N.C. Gen. Stat. § 95-28.2. (ECF No. 1 ¶¶ 20–32.) This matter is now before the Court on Defendant's Motion for Summary Judgment on all claims pursuant to Rule 56 of the Federal Rule of Civil Procedure. (ECF No. 19.) Also before the Court is Plaintiff's Motion to Seal certain documents filed by Defendant in support of its Motion for Summary Judgment. (ECF No. 22.) For the reasons that follow, the Court will grant both motions.

## I.      BACKGROUND

It is undisputed in this case that Plaintiff is a former employee of Defendant who worked for Defendant from October 20, 2020, to January 4, 2021. (ECF Nos. 1 ¶¶ 10, 17; 5 ¶¶ 10, 17; 20-1.) Her offer of employment was made in writing and included a provision that

for her first ninety days of employment, she would be an "introductory" employee who could be "laid off or discharged . . . as exclusively determined by Management." (ECF No. 20-1.) In addition, Plaintiff was provided an employee manual which explained that Defendant had a "Drug Testing" policy that stated:

> [C]urrent and prospective employees will be asked to submit to drug and alcohol testing. No prospective employee will be asked to submit to testing unless an offer of employment has been made. An offer of [employment], however, is conditioned on the prospective employee testing negative for drugs and alcohol. All employees are subject to random drug testing with or without cause. Refusal of drug testing can/will result in immediate termination.

(ECF No. 20-3 at 11.)

At the start of her employment with Defendant, Plaintiff took the required drug test described in the company policy. (ECF No. 20-6 at 5.) This test returned a positive result for marijuana. (*Id.*) After receiving the results of the test, the Defendant's co-owners offered Plaintiff the opportunity to take a second drug test. (ECF No. 20-8 at 2.) Plaintiff then sent them an email thanking them for a second chance and explaining that she was "not sure why [her] first results came back positive." (*Id.*) She further explained in this email that she had a history of trauma caused by domestic violence and had begun taking CBD while at her previous job because she "did not want to take [her] service dog in to [sic] the office with [her]." (*Id.*) She offered that she could "supply [Defendant] with [her] dog's service animal license," and "[could] get [her] doctor to verify the reason why [she] use[d] CBD." (*Id.*)

Plaintiff took a second drug test in early December; however, the results were inconclusive because the specimen provided was the wrong temperature. (ECF No. 20-7 at 1.) Plaintiff then took a third drug test and tested positive for marijuana once again. (ECF No. 20-9 at 5.) Defendant discharged Plaintiff on or about January 4, 2021. (ECF Nos. 1 ¶

17; 5 ¶ 17.)  It is undisputed that Defendant discharged Plaintiff because she failed her drug tests.  (ECF Nos. 1 ¶ 17; 5 ¶ 17; 20 at 12; 21 at 9.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted).  "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor."  *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568).  A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In so doing, "the

3

nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

## III. DISCUSSION

Defendant's motion requests summary judgment on all three of Plaintiff's claims: (1) wrongful discharge in violation of the ADA, (ECF No. 1 ¶¶ 24–27); (2) failure to accommodate in violation of the ADA, (*id.* ¶¶ 20–23); and (3) discrimination for the lawful use of lawful products during nonworking hours in violation of N.C. Gen. Stat. § 95-28.2, (*id.* ¶¶ 28–32). Before the Court addresses the parties' substantive arguments regarding these claims, the Court must first address a procedural irregularity in Defendant's filings that Plaintiff argues might prevent this Court from considering Defendant's motion.

### A. Local Rule 56.1(a)

Plaintiff argues that the Court should not consider Defendant's motion because Defendant violated Local Rule 56.1(a) by not filing a notice of dispositive motion within fourteen days of the close of discovery. (ECF No. 21 at 6.) Defendant responds that its failure to notice the motion was a mistake, but notes that the motion itself was timely filed. (ECF No. 23 at 1–4.) Defendant therefore asks that the Court consider the motion despite the lack of notice pursuant to Local Rule 56.1(g). (*Id.*)

Local Rule 56.1(a) provides that "[a]ny party who intends to file a motion for summary judgment . . . must file and serve notice of intention to file a dispositive motion within 14 days following the close of the discovery period."

Local Rule 56.1(g) provides that "[a] dispositive motion which is not noticed and filed within the prescribed time will not be reached by the Court prior to trial unless the Court determines that its consideration will not cause delay to the proceedings."

The Court, having reviewed the scheduling order and the contentions of the parties in their briefs, has determined that it can adjudicate Defendant's motion without delaying the proceedings. *See, e.g.*, *Pless v. Watkins*, No. 12-CV-94, 2013 WL 3052824, at *1 (M.D.N.C. June 17, 2013) (considering motion for summary judgment filed over three months after the deadline because it was "simple" and "the [c]ourt was able to resolve it before trial"). However, the Court admonishes Defendant that compliance with the Local Rules is necessary "to promote the just *and prompt* determination of all proceedings." L.R. 1.1 (emphasis added).

The Court will nonetheless proceed to the substance of Defendant's motion.

### B. Wrongful Discharge

"The ADA prohibits an employer from terminating a qualified employee because of her disability." *Graves v. Bank of Am., N.A.*, 54 F. Supp. 3d 434, 439 (M.D.N.C. 2014) (citing 42 U.S.C. § 12112(a)). "Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). Here, Plaintiff argues that her evidence establishes a prima facie case of wrongful discharge, (ECF No. 21 at 9), therefore the Court concludes that Plaintiff is proceeding under the *McDonnell Douglas* framework to establish the viability of her claim.

5

"Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination." *Boone v. Bd. of Governors of Univ. of N.C.*, 395 F. Supp. 3d 657, 669 (M.D.N.C. 2019), *aff'd*, 858 F. App'x 622 (4th Cir. 2021). "In an ADA wrongful discharge case, a plaintiff establishes a *prima facie* case if [s]he demonstrates that (1) [s]he is within the ADA's protected class; (2) [s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001).

"If the plaintiff succeeds [in establishing a prima facie case], 'the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Boone*, 395 F. Supp. 3d at 669 (quoting *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)). "Should the defendant satisfy its burden of production, the plaintiff has the final burden to persuade the factfinder that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Notably, "[t]he [Fourth Circuit has] held that employers acting with a 'mixed motive' [will] not be held liable . . . . '[i]n other words, causation requires the disability to be more than a motivating factor; it must be *the only* motivating factor.'" *Price v. Norfolk S. Corp.*, No. 21-CV-223, 2022 WL 4451331, at *5 (E.D. Va. Sept. 23, 2022) (quoting *Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017) (unpublished)); *see Gentry v. E. W.*

*Partners Club Mgmt. Co.*, 816 F.3d 228, 236 (4th Cir. 2016) (affirming jury instruction that required "but-for" causation for ADA discrimination claim).

In its motion, Defendant principally argues that Plaintiff cannot prove the first element of her prima facie case, that is, that she is an individual with a disability. (ECF No. 20 at 7–11.) To survive Defendant's motion Plaintiff must therefore direct the Court to evidence in the record sufficient for a factfinder to reasonably infer that she is an individual with a disability. *See Dash*, 731 F.3d at 311.

The ADA defines an individual with a "disability" as an individual with "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The EEOC has promulgated regulations regarding the definition of "disability" that direct that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . [and] is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(i). However, those regulations also provide that "[n]onetheless, not every impairment will constitute a disability within the meaning [of the ADA]." 29 C.F.R. § 1630.2(j)(ii).

On the record in this case, the Court concludes that Plaintiff has failed to provide sufficient evidence to raise a genuine dispute of material fact that she is an individual with a disability as defined by the ADA and therefore she has failed to establish the first element of a prima facie case for wrongful discharge. Plaintiff cites five pieces of evidence to support her claim that she has a disability. (ECF No. 21 at 2 (citing ECF No. 21-1 ¶¶ 6, 7; *id.* at 7, 9–10; ECF No. 21-2 at 26:11–28:9); *see also* ECF No. 21 at 8 (citing ECF No. 21-1 ¶¶ 6, 7; *id.* at 7, 9–10)). The Court having reviewed each piece of evidence cited by Plaintiff concludes that she has not met her burden.

7

On this issue, Plaintiff first directs the Court to a portion of her deposition testimony where she states that she had told a nurse practitioner that she was taking CBD oil for anxiety and pain; that she did not have a prescription for CBD from any healthcare provider; and that she had "tried a lot of products" but did not know if there was a difference between them, only that "it's all hemp derived." (ECF No. 21-2 at 26:11–28:9 (cited at ECF No. 21 at 2).) This testimony supports only that Plaintiff told the nurse that she was taking a product for health reasons, and that she was taking it without a prescription and without understanding what it was, except that it was hemp derived. Nor is this testimony probative on the issues here—whether Plaintiff actually has any health condition which constitutes a disability under the ADA, or if and how that health condition may have impacted Plaintiff in one or more major life activities.[1]

Second, Plaintiff has presented a letter purportedly written by the nurse whom Plaintiff told that she was taking CBD for anxiety and joint pain. (ECF No. 21-1 at 7 (cited at ECF No. 21 at 2, 8).) This letter is unsworn and unsubstantiated and therefore would be inadmissible at trial. *Doe. v. Meron*, 929 F.3d 153, (4th Cir. 2019) ("[A] party opposing summary judgment must offer evidence that could be presented in a form that would be admissible at trial." (citing Fed. R. Civ. P. 56(c)(2)). Moreover, the letter, which is only four sentences long, does not state that Plaintiff has been diagnosed or simply that Plaintiff has or is being treated for anxiety or joint pain. (*See* ECF No. 21-1 at 7.) At best, the letter states that the nurse "[could] verify that [Plaintiff] [was]

---

[1] In a section of Plaintiff's deposition transcript adjacent to the section that she cited as support for the existence of her disability, she was asked "who diagnosed you with anxiety" and she responded "[m]y healthcare provider." (ECF No. 21-2 at 25:23-25.) This testimony, which came in response to a leading question, is insufficient at this stage of the proceedings to show that Plaintiff had a medical diagnosis of anxiety. *See Munday v. Lees-McRae Coll.*, No. 20-CV-105, 2022 WL 17252598, at *9–10 (W.D.N.C. Nov. 28, 2022) (finding that plaintiff's declaration submitted in opposition to a motion for summary judgment that "he was diagnosed with ADHD in 2005" was not competent evidence that he had the claimed impairment).

8

taking over the counter CBD products for anxiety and muscle spasm." (*Id.*) This is essentially the same non-probative evidence that Plaintiff testified to in her deposition, *i.e.*, that Plaintiff decided to take CBD products for anxiety and muscle spasm, and that she told a nurse about it.

Next, Plaintiff relies on two paragraphs in an affidavit that she prepared and submitted to support her opposition to Defendant's motion. (ECF No. 21-1 ¶¶ 6, 7 (cited at ECF No. 21 at 2, 8).) The first of these paragraphs states that Plaintiff "[has] anxiety resulting from an abusive relationship that limits [her] ability to interact with others, sleep, eat, and regulate [her] emotions" that, if untreated, renders her "afraid to leave [her] house for fear that [she] will be attacked." (*Id.* ¶ 6.) The second of these assertions states that Plaintiff "[has] muscle and joint pain and spasms throughout [her] body resulting from multiple car accidents that limit [her] ability to sit, stand, walk, and manipulate objects with [her] hands," that, if untreated, is "debilitating" and "renders [her] nearly immobile." (*Id.* ¶ 7.) These are mere conclusory statements of opinion by Plaintiff untethered to any specific facts, medical evidence, or other competent evidence, and therefore do not provide sufficient admissible evidence from which a reasonable factfinder could conclude that Plaintiff did have anxiety and joint pain, and further that such impairment is a disability in that it substantially limits a major life activity. *See Dash*, 731 F.3d at 311 ("[T]he nonmoving party must rely on more than conclusory allegations . . . ."); *see also Munday v. Lees-McRae Coll.*, No. 20-CV-105, 2022 WL 17252598, at *8–11 (W.D.N.C. Nov. 28, 2022) (finding no reasonable jury could conclude that plaintiff was "disabled" under the meaning of the ADA based on a declaration of plaintiff that "he was diagnosed with ADHD" and a declaration of the plaintiff's father that the plaintiff "[was] impaired in many major life functions" due to his ADHD).

9

Finally, Plaintiff's last piece of evidence cited in support of the existence of her claimed disability is the email that she sent to Defendant after she failed her first drug test and was offered a second chance. (ECF No. 21-1 at 9–10 (cited at ECF No. 21 at 2, 8).) In this email Plaintiff does describe significant trauma that she claims occurred in her past, however the email does not disclose the existence of the disabilities that Plaintiff currently claims. (*See id.*) In addition, while Plaintiff in the email mentions having a service dog that will "sit in [her] lap to calm [her] down when [she] start[s] getting overwhelmed," (*id.*), without more no reasonable factfinder cannot infer that Plaintiff has a disability that substantially limits a major life activity merely from the fact that she may have a service dog. The email also states that Plaintiff "[could] get [her] doctor to verify the reason why [she] use[d] CBD instead of prescription medication," (*id.*), however, the mere offer of evidence is not evidence of the fact to be proved. Finally, the Court notes that while the email states that Plaintiff sometimes becomes "overwhelmed," she does not specifically claim that she suffered from anxiety, joint pain, any other disability.

Because the evidence that Plaintiff offers, whether considered piece by piece or in combination, is insufficient to support an inference that Plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities, the Court concludes that Plaintiff has failed to establish the first element of her prima facia case on her wrongful discharge claim. However, the Court recognizes the federal policy that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability," 29 C.F.R. § 1630.1; therefore, the Court has also considered whether

Plaintiff could prevail on her claim if she had established that she was an individual with a disability. The Court concludes that Plaintiff's wrongful discharge would nevertheless fail.

In addition to arguing that Plaintiff is not disabled, Defendant has articulated a legitimate, nondiscriminatory reason for discharging Plaintiff—specifically, she was discharged for testing positive on at least two drug tests in violation of Defendant's employment policies. (ECF No. 20 at 11–13.) This is uncontested, as Plaintiff has repeatedly conceded that she was "terminated . . . for testing positive for marijuana," though she claims it is caused by legal hemp products. (ECF Nos. 21 at 9; 1 ¶ 17.) Under the *McDonnell Douglas* framework, Plaintiff therefore must respond by offering evidence that Defendant's articulated reason was merely a pretext for discrimination. However, rather than attempt to show Defendant's articulated reason was pretext, Plaintiff instead argues that she should still prevail because her evidence shows that Defendant "knew, and accepted, that the positive test was a result of the legal use of hemp products to treat [her] disability." (ECF No. 21 at 10.) Plaintiff's contention is not supported by the record.[2] Nor will the Court entertain Plaintiff's argument that her situation is somehow analogous to a diabetic employee being terminated for using insulin because the needles made the employer uncomfortable. (*Id.* at 10); *see Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390, 395 (M.D.N.C. 2014) (refusing to consider a frivolous argument made in a dispositive motion). More

---

[2] The evidence that Plaintiff cites for this contention does not include any statement from the personnel who decided to discharge her—whether under oath at deposition, in an email or other correspondence, or even in the form of inadmissible hearsay—that they "accepted" that her positive drug tests were caused by legal use of a legal product to treat a disability. (*See* ECF Nos. 21-1 ¶ 11; *id.* at 7; 21-3 at 81:10-82:25, 86:9-87:9 (all cited at ECF No. 21 at 10).) At best, Plaintiff has presented testimony from her immediate supervisor that he spoke to the decisionmakers and he "guess[ed] they accepted that [CBD oil] could cause [a positive] result [on a drug test]," and thought that "maybe that was . . . why the[y gave her] multiple opportunities for the additional drug screenings." (ECF No. 21-3 at 82:15-19.)

11

importantly, Plaintiff points to no evidence to show that Defendant's reason for firing her was a mere pretext.

The Court concludes that there is no genuine issue of fact upon which a reasonable jury could find in favor of Plaintiff on her wrongful discharge claim in that: (1) Plaintiff has failed to establish a prima facia case of wrongful discharge in that she failed to provide sufficient evidence that she is an individual with a disability; (2) Defendant has articulated a legitimate, nondiscriminatory reason for discharging Plaintiff—specifically, she was discharged for failing multiple drug tests in violation of Defendant's employment policies; and (3) and Plaintiff lacks any evidence to persuade any reasonable factfinder that Defendant's stated legitimate reason for its adverse action was mere pretext and that disability discrimination was the but-for cause of Plaintiff's discharge.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's wrongful discharge claim.

## C. Failure to Accommodate

"The ADA also obligates employers to provide 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee.'" *Graves*, 54 F. Supp. 3d at 441 (quoting 42 U.S.C. § 12112(b)(5)(A)). "To avoid summary judgment, a plaintiff must point to evidence sufficient for a factfinder to determine that (1) she was an individual with a disability within the meaning of the statute; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) her employer refused to make such accommodations." *Id.* at 442 (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).

For this claim, Defendant again argues that Plaintiff was not disabled. (ECF No. 20 at 13.) Defendant also argues that, even if she had a disability, it cannot be liable for failure to accommodate Plaintiff because it did not have notice that she was disabled or required an accommodation. (*Id.* at 13–15.)

As with Plaintiff's wrongful discharge claim, Plaintiff lacks sufficient evidence to raise a genuine dispute regarding whether she is an individual with a disability. However, despite this failure, in light of the policies animating the ADA previously discussed, the Court will consider, as it did on the wrongful discharge claim, whether Plaintiff could prevail on this claim if she had established that she was an individual with a disability. The Court concludes that Plaintiff's failure to accommodate claim would likewise fail.

"The burden to provide notice of a disability is 'not a great one . . . . Adequate notice simply informs the employer of both the disability and the employee's need for the accommodations for that disability.'" *Rock v. McHugh*, 819 F. Supp. 2d 456, 473 (D. Md. 2011) (quoting *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 369 n.5 (4th Cir. 2008)). Once an employee "communicates to [her] employer [her] disability and [her] desire for an accommodation," a "duty to engage in an interactive process to identify a reasonable accommodation is generally triggered." *Wilson*, 717 F.3d at 346–47. However, "even if an employer's duty to engage in the interactive process is triggered, the employer's liability for failing to engage in that process may collapse for a number of reasons." *Id.* at 347. "The interactive process requires bilateral cooperation, open communication, and good faith," and "[i]f an employer engages in the interactive process with the employee in good faith . . . but the employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for failure to provide reasonable accommodations." *Allen*

*v. City of Raleigh*, 140 F. Supp. 3d 470, 483 (E.D.N.C. 2015) (quoting *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132–33 (1st Cir. 2014)); *see also Boone*, 395 F. Supp. 3d at 669–70 (same, citing *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (unpublished)).

Plaintiff contends that Defendant had notice that she was disabled because "she gave her immediate supervisor a doctor's note and told him verbally" and then that supervisor relayed this to the relevant decisionmakers. (ECF No. 21 at 8.) She also claims that she "requested that [Defendant] accommodate her by letting her continue working and treating her disability [with CBD oil]." (*Id.* at 9.)

The Court first finds that Plaintiff's evidence does not create a genuine issue of material fact regarding whether she provided notice of her disability to Defendant. The evidence that Plaintiff has directed the Court to consider on this issue is almost identical to the evidence that Plaintiff cited to support her contention that she had a disability. This evidence amounts to: (1) a statement in her affidavit that she gave the four-sentence nurse's note discussed earlier to her immediate supervisor, (ECF No. 21-1 ¶ 11 (cited at ECF No. 21 at 8); *see also* ECF No. 21-2 at 30:18-25 (Plaintiff's deposition testimony that she gave the note to her immediate supervisor) (cited at ECF No. 21 at 8)); (2) a statement in her affidavit that she sent the email, also discussed earlier, to her supervisor and Defendant's co-owners, (ECF No. 21-1 ¶ 12 (cited at ECF No. 21 at 8)); and (3) deposition testimony that she verbally told her immediate supervisor that she took CBD for anxiety, (ECF No. 21-3 at 87:5-9, 88:13-18, 89:23-90:14 (cited at ECF No. 21 at 8)). Because, as the Court has already found, neither the nurse's note, email, nor general statements by Plaintiff that she took CBD for anxiety are sufficient evidence to allow a reasonable inference that Plaintiff had an impairment that affected a major life activity, it follows that this

14

same evidence is insufficient to show that Plaintiff put Defendant's on notice of her claimed disability.

Nor does the Court find that Plaintiff's proffered evidence creates a genuine issue of material fact from which a reasonable juror could find that she provided notice to Defendant that she was in need of an accommodation for her claimed disability. Notably, Plaintiff has not cited any part of the record to support her contention that she requested an accommodation, (ECF No. 21 at 9.) When an employee fails to make a clear request for an accommodation and communicate such request to the employer, as Plaintiff has failed to do here, the employer has not violated the ADA. *Huppenbauer v. May Dep't Stores Co.*, 99 F.3d 1130 (4th Cir. 1996) (unpublished table decision) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." (quoting *Movisky v. Broward County*, 80 F.3d 445, 448 (11th Cir.1996)); *see also Hrdlicka v. Gen. Motors, LLC*, 59 F.4th 791, 803 (6th Cir. 2023) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999))).

Considering the foregoing, the Court concludes that with respect to Plaintiff's failure to accommodate claim: (1) Plaintiff has failed to provide sufficient evidence that she is an individual with a disability; (2) failed to provide sufficient evidence that she gave Defendant notice of her alleged disability; and (3) failed to provide sufficient evidence that she requested any accommodation from Defendant.

Accordingly, the Defendant is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim.

### D. Plaintiff's State Law Claim Pursuant to N.C. Gen. Stat. § 95-28.2(b) (Discrimination Against Persons for Lawful Use of Lawful Products During Nonworking Hours)

With respect to Plaintiff's final claim which is brought pursuant to N.C. Gen. Stat. 28.2(b) Defendant contends that it is entitled to judgment as a matter of law based on an exception outlined in statute.

N.C. Gen. Stat. § 95-28.2(b) reads in pertinent part:

> It is an unlawful employment practice for an employer to . . . discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because . . . the employee engages in or has engaged in the lawful use of lawful products if the activity occurs off the premises of the employer during nonworking hours and does not adversely affect the employee's job performance or the person's ability to properly fulfill the responsibilities of the position in question or the safety of other employees.

The exception claimed by Defendant is found in N.C. Gen. Stat. § 95-28.2(c)(1) and reads as follows:

> It is not a violation of this section for an employer to . . . [r]estrict the lawful use of lawful products by employees during nonworking hours if the restriction relates to a bona fide occupational requirement and is reasonably related to the employment activities.

Specifically, Defendant argues that because the undisputed facts show that Plaintiff was discharged pursuant to a bona fide occupational requirement reasonably related to employment activities (specifically, a drug testing policy related to workplace safety), she is not entitled to relief under state law. (ECF No. 20 at 15–18.) Plaintiff responds that Defendant is not entitled to summary judgment based on its contention because Defendant has not offered any argument or evidence to show that its drug test policy was reasonably related to employment activities. (ECF No. 21 at 12.)

16

Given the parties' arguments regarding the statute and the undisputed fact that Plaintiff was discharged for testing positive for marijuana on drug tests administered pursuant to a drug testing policy, the determinative question before the Court is whether Defendant has shown that the policy was a "bona fide occupational requirement . . . reasonably related to [Defendant's] employment activities."[3] N.C. Gen. Stat. § 95-28.2(c)(1).

Defendant's Drug Testing Policy provided, among other things, that all offers of employment were conditioned "on the prospective employee testing negative for drugs and alcohol." (ECF No. 20-3 at 11.) The policy defined "drug" as "[a]ny chemical substance that produces physical, mental, emotional, or behavioral change in the user." (*Id.* at 19.) The policy further defined "illegal drug" to include "[a]ny drug or derivative thereof whose use, possession, [or] sale . . . is illegal or regulated under any federal, state, or local law or regulation," although Defendant's policy made an exception for drugs used pursuant to a prescription by a physician. (*Id.*) According to Defendant, it adopted its policy around drugs and alcohol because it was "committed to providing a safe and productive workplace for its employees." (*Id.*)

The drug tests that were administered to Plaintiff pursuant to Defendant's policy tested her for amphetamines, cocaine, marijuana, opiates, and PCP. (ECF Nos. 20-6 at 5; 20-9 at 5.)

---

[3] The Court's research has found only one case with an opinion that addresses what a plaintiff must show to prevail on a claim brought under this statute: *Smith v. Manheim Remarketing Inc.*, No. 19-CV-86, 2019 WL 12872745 (W.D.N.C. Nov. 26, 2019). In that case, the *Smith* court stated that "[i]n order to adequately plead a wrongful discharge claim under this Act, [a] [p]laintiff must show that: (i) she was using a lawful product, (ii) her use of that product was lawful, and (iii) [d]efendants' restriction of her use did not relate to a bona fide occupational requirement reasonably related to employment activities." *Id.* at *3 (citing N.C. Gen. Stat. § 95-28.2(b) and (c)). Because § 95-28.2(c)(1) exempts certain conduct from liability that might otherwise be imposed under § 95-28.2(b), this Court finds that it should be treated as a defense, with a burden of proof on the defendant. *See Miller v. Inst. for Def. Analyses*, No. 17-CV-2411, 2019 WL 937860, at *11 (D. Colo. Feb. 26, 2019) (treating similar provision under the Colorado Lawful Activities Statute as an affirmative defense), *aff'd*, 795 F. App'x 590 (10th Cir. 2019).

These are all heavily regulated substances that are (absent a medical prescription) generally illegal to possess under federal law and in the state of North Carolina. On the two tests administered to Plaintiff, the tests indicated positive for marijuana. (ECF Nos. 20-6 at 5; 20-9 at 5.) Notably, while some states have legalized marijuana, it remains a Schedule I controlled substance under federal law, 21 C.F.R. § 1308.11(d)(23), and a Schedule VI controlled substance under North Carolina law, N.C. Gen. Stat. § 90-94(b)(1).

A "bona fide occupational requirement" has been defined by one court as a requirement "that an employer imposes in good faith, honestly, and sincerely." *Miller*, 2019 WL 937860, at *11 (interpreting phrase "[r]elates to a bona fide occupational requirement or is reasonably and rationally related to . . . employment activities" in Colorado Lawful Activities Statute). Because Defendant's drug policy tests only for the presence of illegal or heavily regulated substances, the Court has no difficulty finding that that Defendant has shown that it acted in good faith, honestly, and sincerely in implementing a drug policy to promote workplace safety and productivity in the workplace. Further, the Court finds for the same reason that Defendant's policy was reasonably related to its employment activities in that it was related to maintaining safety in the workplace. *Cf. Garner v. Rettenbach Constructors Inc.*, 515 S.E.2d 438, 439, 441 (N.C. 1999) (the North Carolina Supreme Court has held that a defendant who adopted a "Drug-Free Workplace Policy" and later terminated a plaintiff for testing positive for marijuana had a permissible reason for the termination, noting that "[u]nder the doctrine of employment at will, an employer who may fire an employee for any reason or no reason at all, may certainly terminate an employee for suspected drug use as part of an effort to maintain a drug-free workplace," so long as it is not done for an

18

unlawful reason or purpose). Here there is no evidence in the record, nor does Plaintiff argue, that Defendant's drug test policy was enacted for unlawful reason or purpose.

Finally, Plaintiff has argued that Defendant's drug testing policy was not reasonably related to an employment activity because there is no evidence that Plaintiff's CBD use created safety concerns or negatively impact her job performance. (ECF No. 21 at 12–13.) Plaintiff's argument misses the point and is not persuasive. Plaintiff was discharged pursuant to a written drug policy of general applicability, not because of any actual performance issues while working for Defendant. The "bona fide occupational requirement" in this case was a requirement that Plaintiff, and any other employee for that matter, test negative for the five substances tested for under its policy, not that she performs her job adequately and without causing safety incidents.

Because Defendant has demonstrated that Plaintiff was discharged pursuant to a bona fide occupational requirement reasonably related to keeping the workplace safe, the Court concludes that Plaintiff is not entitled to relief. Accordingly, the Court finds that Defendant is entitled to summary judgment on this state law claim as a matter of law.

## IV. MOTION TO SEAL

"[T]he public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* (citation omitted). "When presented with a request to seal[4] judicial records or documents, a district

---

[4] Courts construe a request to redact a document as a request to seal in part. *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 424–25 (M.D.N.C. 2011) (collecting cases).

court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004).

Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576).

Procedurally, a district court presented with a sealing request must "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272.

A court has discretion to seal documents where the "public's right of access is outweighed by competing interests." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

There are currently six exhibits filed in support of Defendant's Motion for Summary Judgment that are under temporary seal. (ECF Nos. 20-2; 20-5; 20-6; 20-7; 20-9; 20-11.) Defendant does not claim confidentiality for any of these exhibits. (ECF No. 24 at 1.) Plaintiff claims confidentiality for only two of them. (ECF No. 22 at 2.)

Initially, the Court finds that both documents at issue are subject to the public's First Amendment right of access because they are related to a motion for summary judgment. *Doe*, 749 F.3d at 267. The Court also finds that the public has had notice of and reasonable opportunity to object to the motion to seal, as it was publicly filed on the docket of this case three months ago. The Court now turns to issues specific to each of the two documents.

The first document at issue is a copy of Plaintiff's drug test results. (ECF No. 20-7.) Plaintiff does not ask that this document be entirely sealed; rather, she asks only that her social security number and phone number be redacted. (ECF No. 22 at 3.) Defendant does not oppose these requests. (ECF No. 24 at 2.) Plaintiff has already filed a version of this document with her proposed redactions. (ECF No. 22-1.) Because Plaintiff's social security number and phone number are personal information not relevant to this litigation, the Court will grant Plaintiff's motion regarding this document and order ECF No. 20-7 permanently sealed.

The second document at issue is a 57-page compilation of records related to Plaintiff's healthcare history. (ECF No. 20-11.) Plaintiff asks that this document be entirely sealed, (ECF No. 22 at 3–4), and Defendant does not oppose that request, (ECF No. 24 at 2).

In its briefs, Defendant relied on specific portions of this document to support its argument that Plaintiff cannot prove that she is an individual with a disability. (ECF No. 20 at 9–10.) According to Defendant, these portions were affirmative evidence that Plaintiff was in good health. (*Id.*) Defendant also cited this document in it is entirety to make an argument that, if a factfinder were to review every page of the document, the factfinder would not find any evidence of Plaintiff's claimed disabilities. (ECF No. 23 at 8.) However, because the Court concluded that Plaintiff had not offered sufficient evidence for a reasonable factfinder to conclude that she was disabled or otherwise entitled to relief for either of her ADA claims, it was unnecessary for the Court to consider this evidence and whether it supported Defendant's arguments.

Finally, Plaintiff, on the other hand, did not rely on this exhibit at all to make any argument in opposition to Defendant's motion for summary judgment. (*See generally* ECF No. 21.) Notably, in her motion to seal, Plaintiff argues that "[t]he range of medical issues contained in this document

varies from seasonal allergies to contraceptive management, most of which has nothing to do with the anxiety and chronic pain alleged in the Complaint." (ECF No. 22 at 3.)

Thus, the parties agree that this document was irrelevant, and the Court concurs with that assessment. Therefore, because medical records implicate privacy concerns, the Court will permanently seal ECF No. 20-11 in its entirety.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 19), is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal, (ECF No. 22), is **GRANTED**. ECF Nos. 20-7 and ECF No. 20-11 are ordered permanently sealed. All other documents under temporary seal in this case are ordered unsealed.

A Judgment will be entered contemporaneously with this Order.

This, the 14th day of March 2023.

/s/Loretta C. Biggs
United States District Judge